**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

STEVEN KUO and ANNA KIM,

*Plaintiffs*,

-against-

HAO NOODLE AND TEA, LLC and RONG ZHU, a/k/a JULIA ZHU, *individually,*

*Defendants*.

-----------------------------------------------------------------------X

**16 CV 6361**

**FIRST AMENDED COMPLAINT**

Plaintiffs Steven Kuo and Anna Kim, by their counsel, The Harman Firm, LLP, allege for their First Amended Complaint against Defendant Hao Noodle and Tea, LLC and Defendant Rong Zhu, a/k/a Julia Zhu, as follows:

## NATURE OF THE ACTION

1. Plaintiffs Steven Kuo ("Mr. Kuo") and Anna Kim ("Ms. Kim") (hereinafter collectively referred to as "Plaintiffs") also seek damages and costs against Defendant Hao Noodle and Tea, LLC ("Defendant Hao Noodle" or "Hao Noodle") and Defendant Rong Zhu, a/k/a Julia Zhu ("Defendant Zhu" or "Ms. Zhu"), (hereinafter collectively referred to as "Defendants") for terminating their employment in retaliation for their complaints about Defendants' failure to make reasonable accommodations for persons with disabilities, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§ 8-101–131.

2. Plaintiffs also seek damages and costs against Defendants for Defendants' untimely payment of wages, in violation of the New York State Labor Law ("NYLL"), N.Y. Lab. Law § 191.

3. Plaintiffs also seek damages and costs against Defendants for unlawfully terminating their employment in retaliation for their complaints about Defendants' violations of health and safety standards, in violation of the NYLL, N.Y. Lab. Law § 740.

4. Mr. Kuo, individually, seeks damages and costs against Defendants for discriminating against him by subjecting him to a hostile work environment based on his sexual orientation, in violation of the NYCHRL.

5. Mr. Kuo, individually, also seeks damages and costs against Defendants for breach of contract, in violation of the New York state common law.

## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over Plaintiffs' claims arising under the ADA.

7. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' claims brought under the NYLL, NYCHRL, and New York state common law, as those claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

8. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York as a substantial part of the events giving rise to the claims occurred within this District.

## TRIAL BY JURY

9. Plaintiffs respectfully request a trial before a jury.

## PARTIES

10. At all times relevant hereto, Mr. Kuo was and is a resident of New York County in the State of New York.

11. At all times relevant hereto, Ms. Kim was and is a resident of New York County in the State of New York.

12. On information and belief, at all times relevant hereto, Defendant Hao Noodle was and is a limited liability company organized under the laws of the State of New York with its principal place of business at 401 Sixth Avenue, New York, New York 10013.

13. On information and belief, at all times relevant hereto, Defendant Zhu was and is a resident of New York County in the State of New York. Upon information and belief, Zhu is the sole owner of Hao Noodle.

## STATEMENT OF FACTS

14. On February 20, 2016, Ms. Zhu hired Mr. Kuo to be the General Manager of Hao Noodle.

15. On or about March 1, 2016, Ms. Zhu delivered Mr. Kuo an employment agreement outlining the terms and conditions of his employment.

16. Hao Noodle agreed to pay Mr. Kuo $88,000 annually, with a bonus, among other benefits.

17. As Hao Noodle's General Manager, Mr. Kuo reported directly to Ms. Zhu. He was responsible for hiring and disciplining waiters, line cooks, busboys, and hosts, scheduling, and implementing Ms. Zhu's decisions concerning the operations of Hao Noodle.

18. In and around April 2016, Ms. Zhu hired Ms. Kim to be the Assistant General Manager of Hao Noodle.

19. On or about April 21, 2016, Ms. Zhu delivered Ms. Kim an employment agreement outlining the terms and conditions of his employment.

20. Hao Noodle agreed to pay Ms. Kim $70,000 annually, with a bonus, among other benefits.

21. Ms. Kim was responsible for assisting Mr. Kuo and performing Mr. Kuo's responsibilities in his absence.

22. Throughout their employment at Hao Noodle, Mr. Kuo and Ms. Kim were dedicated, reliable employees who consistently fulfilled all of their job duties. Neither Ms. Kim nor Mr. Kuo ever received any type of write-up, discipline, warning, or the like.

23. Ms. Zhu, Hao Noodle's CEO, never expressed dissatisfaction with either Mr. Kuo's or Ms. Kim's performance. In fact, she regularly praised both Mr. Kuo and Ms. Kim for their work at Hao Noodle.

24. Mr. Kuo and Ms. Kim frequently complained of Hao Noodle's violations of various laws, rules, and regulations designed to keep the public safe throughout their employment at Hao Noodle. The following summarizes these complaints and Hao Noodle's responses.

25. Ms. Zhu refused to post certain signs within the establishment (e.g. a Certificate of Occupancy, "No Smoking" signs, and a Sales Tax Certificate of Authority) and allowed

employees to smoke throughout the restaurant building, in violation of regulations promulgated by the New York City Department of Health, Department of Building, and Fire Department.

26. Hao Noodle's building had significant problems that remained unaddressed throughout Mr. Kuo's and Ms. Kim's employment. For example, the hatch from the street to the basement leaked severely, and the exhaust fan did not function consistently.

27. Hao Noodle was frequently without adequate hot water. The water temperature reading at the restaurant never exceeded one hundred (100) degrees Fahrenheit, although Department of Health standards mandate temperatures of one hundred and fifty (150) degrees Fahrenheit for hot water and one hundred and twenty (120) degrees Fahrenheit for chemical dishwashers. On several days, there was no hot water whatsoever.

28. Mr. Kuo and Ms. Kim regularly complained to Ms. Zhu that these conditions were unsafe and unlawful and created serious health and safety concerns. However, Ms. Zhu always dismissed their complaints, and the issues were never resolved.

29. On March 31, 2016, Fabian Ferguson was hired as a Department of Health consultant for Hao Noodle.

30. After inspecting Hao Noodle's facilities, Mr. Ferguson confirmed that the restaurant was in violation of several Department of Health regulations.

31. When Ms. Kim and Mr. Kuo shared Mr. Ferguson's report with Ms. Zhu, she ignored it, stating that these matters were "trivial."

32. On April 21, 2016, Kevin Pierre, an inspector for the Department of Building, cited Hao Noodle for several deficiencies. These deficiencies included heating, ventilation, and air conditioning violations and violations of the Americans with Disabilities Act ("ADA"), which also violate New York City Construction Code.

33. Mr. Kuo and Ms. Kim shared Mr. Pierre's report with Ms. Zhu and emphasized the importance of adhering to building safety regulations and making reasonable accommodations for persons with disabilities, yet Ms. Zhu again did nothing to rectify any of the listed deficiencies.

34. Mr. Kuo and Ms. Kim also complained that Hao Noodle served alcohol without a license and hired staff who were not legally permitted to work in the United States, but Ms. Zhu dismissed these concerns, as well.

35. During his employment at Hao Noodle, Mr. Kuo worked, on average, one hundred and twelve (112) hours per week and sixteen (16) hours per day.

36. In and around late April 2016, he worked for fifteen (15) consecutive days, often working between seventeen (17) and eighteen (18) hours each day.

37. Shortly afterward, on May 11, 2016, Mr. Kuo fainted while at work and went to CityMD, an urgent care facility in Manhattan, where he was diagnosed with a severe migraine, vertigo, and equilibrium imbalance caused by extreme stress and exhaustion.

38. He immediately notified Ms. Zhu, who demanded that Mr. Kuo return to work immediately upon his release from CityMD, despite the doctor's orders to stay on bed rest for the remainder of the day.

39. Ms. Zhu's willful disregard of these many serious health and safety violations culminated in an argument between herself, Ms. Kim, and Mr. Kuo on June 10, 2016, in which Mr. Kuo and Ms. Kim expressed their frustration about their numerous unresolved complaints.

40. On June 11, 2016, Ms. Zhu abruptly terminated the employments of both Mr. Kuo and Ms. Kim without explanation.

41. In addition, Hao Noodle's management and employees overtly discriminated against Mr. Kuo based on his sexual orientation throughout his employment at Hao Noodle.

42. Hao Noodle's Head Chefs, Chef Hui Zhu and Chef Jun Chen frequently called him a "faggot" in Mandarin Chinese, in which Mr. Kuo is fluent.

43. Mr. Kuo regularly overheard homophobic comments made by Chef Zhu, Chef Chen and line cooks in the kitchen.

44. Mr. Kuo did not have the authority to discipline the Head Chefs.

45. Mr. Kuo complained to Ms. Zhu about the hostile work environment, but she made no attempt to correct the situation and trivialized his concerns, claiming that Chinese attitudes were different and therefore such comments and slurs were just "part of the culture."

46. Hao Noodle also consistently paid its employees late.

47. On March 3, 2016, Lishan "Leslie" Wang, Hao Noodle's Administration Manager, told Mr. Kuo that paychecks would be sent biweekly each Friday.

48. However, for the next nine (9) weeks, each paycheck was late.

49. In or around the beginning of May 2016, Mr. Kuo complained to Ms. Zhu and Ms. Wang about the untimely paychecks.

50. Despite Mr. Kuo's multiple inquiries and complaints, Mr. Kuo and Ms. Kim continued to receive their paychecks late throughout their employment at Hao Noodle.

51. Although Hao Noodle began to issue paychecks in a timely manner for a period of time in May 2016, paychecks were again late shortly before Mr. Kuo's and Ms. Kim's terminations.

52. To date, Mr. Kuo and Ms. Kim have not received all monies owed to them.

53. Additionally, Mr. Kuo never received the monthly health insurance allowance stipulated by his employment contract.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Retaliation in Violation of the ADA

### (All Plaintiffs)

54. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 53 with the same force as though separately alleged herein.

55. The ADA prohibits discrimination against any individual because that individual has opposed any act or practice illegal within the ADA.

56. Plaintiffs properly complained to Defendants about Defendants' ADA violations.

57. Defendants retaliated against Plaintiffs by, among other things, terminating their employment.

58. As a direct and proximate cause of Defendants' retaliation, Plaintiffs have suffered, and continue to suffer, substantial economic damages.

59. Plaintiffs are entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

### SECOND CAUSE OF ACTION

### Untimely Payment of Wages in Violation of the NYLL

### (All Plaintiffs)

60. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 59 with the same force as though separately alleged herein.

61. NYLL § 191 provides:

> 1. Every employer shall pay wages in accordance with the following provisions:
> […]

> d. Clerical and other worker - A clerical and other worker shall be paid wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular days designated in advance by the employer.
>
> 2. No employee shall be required as a condition of employment to accept wages at periods other than as provided in this section.
>
> 3. If employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section. If requested by the employee, such wages shall be paid by mail.

62. Defendants violated NYLL §191 by wrongfully, deliberately, and repeatedly not paying Plaintiffs the wages to which they were entitled in a timely manner.

63. As a direct and proximate cause of Defendants' illegal conduct, Plaintiffs have been denied wages, salary, and employment benefits, and have suffered actual monetary losses.

64. Plaintiffs are entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

**THIRD CAUSE OF ACTION**
**Retaliation in Violation of NYLL § 740**
**(All Plaintiffs)**

65. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 64 with the same force as though separately alleged herein.

66. The NYLL prohibits an employer from taking retaliatory personnel action against an employee because the employee does any of the following: (1) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; (2) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such violation of a law, rule or regulation by such employer; or (3) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation.

67. Plaintiffs threatened to disclose, complained of, objected to, and refused to participate in conduct concerning substantial dangers to public health and safety.

68. Defendants ultimately terminated Plaintiffs in retaliation for their complaints.

69. As a direct and proximate consequence of Defendants' illegal conduct, Plaintiffs have been denied wages, salary, employment benefits, and professional advancement, and have suffered actual monetary losses.

70. Plaintiffs are entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

**FOURTH CAUSE OF ACTION**
**Retaliation in Violation of the NYCHRL**
**(All Plaintiffs)**

71. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 70 with the same force as though separately alleged herein.

72. The NYCHRL provides, "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the…disability…of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

73. The NYCHRL also prohibits an employer from retaliating against any individual who opposes any practice illegal under the NYCHRL.

74. Plaintiffs properly complained to Defendants about Defendants' failure to accommodate individuals with disabilities, including deficiencies which a Department of Building inspector had identified as ADA violations.

75. Defendants ultimately terminated Plaintiffs in retaliation for their complaints.

76. As a direct and proximate consequence of Defendants' retaliation, Plaintiffs have suffered, and continue to suffer, substantial monetary damages.

77. Defendants' retaliation against Plaintiffs was willful and in reckless disregard of Plaintiffs' rights under the NYCHRL. Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants.

**FIFTH CAUSE OF ACTION**
**Hostile Work Environment in Violation of the NYCHRL**
**(Plaintiff Kuo)**

78. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 77 with the same force as though separately alleged herein.

79. The NYCHRL prohibits employers from, among other things, discriminating against an employee because of their sexual orientation.

80. Defendants created a hostile work environment for Mr. Kuo by subjecting him to repeated harassment and offensive comments based on his sexual orientation that were so severe and pervasive that they altered the terms, conditions, or privileges of his employment.

81. As a direct and proximate consequence of Defendants' sexual orientation discrimination, Mr. Kuo has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary, and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

82. Defendants' discriminatory treatment of Mr. Kuo was willful and in reckless disregard of Mr. Kuo's rights under the NYCHRL. Accordingly, Mr. Kuo is entitled to an award of punitive damages against Defendants.

**SIXTH CAUSE OF ACTION**
**Breach of Contract in Violation of the New York State Common Law**
**(Plaintiff Kuo)**

83. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 82 with the same force as though separately alleged herein.

84. By Mr. Kuo's employment contract, Defendants agreed to pay Mr. Kuo a monthly health insurance stipend during his employment as partial consideration for the work Mr. Kuo provided.

85. Throughout his employment, Mr. Kuo satisfactorily performed his job duties, but Defendants did not pay him the agreed-upon stipend, despite his multiple inquiries and complaints.

86. Defendants violated their contractual obligations to Mr. Kuo by failing to pay him the agreed-upon stipend.

87. As a direct and proximate consequence of Defendants' illegal conduct, Mr. Kuo has been denied wages, salary, and employment benefits, and has suffered actual monetary losses.

88. Mr. Kuo is entitled to compensatory damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

## REQUEST FOR RELIEF

**WHEREFORE**, the named Plaintiffs respectfully request that this Court grant the following relief:

A. on Plaintiffs' first claim, damages to be determined at trial;

B. on Plaintiffs' second claim, damages to be determined at trial;

C. on Plaintiffs' third claim, damages to be determined at trial;

D. on Plaintiffs' fourth claim, damages to be determined at trial;

E. on Plaintiffs' fifth claim, damages to be determined at trial;

F. on Plaintiffs' sixth claim, damages to be determined at trial;

G. an award of prejudgment and post judgment interest;

H. an award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

I. such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 10, 2016

By: s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
*Attorneys for Plaintiffs*
220 Fifth Ave., Suite 900
New York, New York 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com